UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ROBERT N. LAMOUREUX, et al.,
individually and on behalf of others similarly situated,

                              Plaintiffs,

v.                                                    1:21-CV-0336
                                                      (GTS/CFH)
TRUSTCO BANK, et al.,

                              Defendants.

_____

APPEARANCES:                                          OF COUNSEL:

CHERUNDOLO LAW FIRM, PLLC                              J. PATRICK LANNON, ESQ.,
   Counsel for Plaintiff                              JOHN C. CHERUNDOLO, ESQ.
AXA Tower One, 15th Floor
100 Madison Street
Syracuse, NY 13202

KALIEL GOLD, PLLC                                     JEFFREY D. KALIEL, ESQ.,
   Co-Counsel for Plaintiff                           SOPHIA GOREN GOLD, ESQ.
1100 15th Street NW, 4th Floor
Washington, DC 20005

WILENTZ GOLDMAN & SPITZER PA                          KEVIN P. RODDY, ESQ.,
   Co-Counsel for Plaintiff
90 Woodbridge Center Drive, Suite 900
Woodbridge, NJ 07095

THE KICK LAW FIRM                                     JEFFREY BILS, ESQ.,
   Co-Counsel for Plaintiff                           TARAS KICK, ESQ.
815 Moraga Drive
Los Angeles, CA 90049

BAILEY, JOHNSON & PECK, P.C.                          CRYSTAL R. PECK, ESQ.,
   Counsel for Defendant Trustco Bank                 JOHN W. BAILEY, ESQ.
5 Pine West Plaza, Suite 507                          RYAN P. BAILEY, ESQ.
Albany, NY 12205

GLENN T. SUDDABY, Chief United States District Judge

<u>**DECISION and ORDER**</u>

Currently before the Court, in this putative class action filed by Robert N. Lamoureux ("Plaintiff") against Defendant Trustco Bank ("Bank") and Does 1 through 100 (collectively, "Defendants"), is the Bank's motion to dismiss Plaintiff's Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 17.) For the reasons set forth below, the Court grants in part and denies in part the Bank's motion.

I.    **RELEVANT BACKGROUND**

A.    **Plaintiff's Complaint**

Generally, in his Complaint filed on March 24, 2021, Plaintiff alleges that the Bank violated the contractual agreements governing his accounts, as well as statutory law, when engaging in the following four practices: (1) failing to comply with Regulation E's Opt-In Rule by not fulfilling certain Regulation E prerequisites in its Overdraft Protection contract document (Dkt. No. 1, at ¶¶ 12-14); (2) assessing overdraft fees ("OD fees") on "Authorized Positive, Purportedly Settle Negative Transactions" ("APPSN Transactions") (*id.* at ¶¶ 15-59); (3) assessing multiple $36 insufficient fund fees ("NSF fees") on electronic transactions or checks when they are reprocessed after being returned for insufficient funds (*id.* at ¶¶ 55-68); and (4) in late August 2020 to September 2020, mishandling the operation of the Bank's software system meant to be utilized by its bank customers for electronic transactions, which caused customers to incur multiple NSF fees and/or OD fees (*id.* at ¶¶ 103, 114).

Based on these factual allegations, Plaintiff asserts the following six claims: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) unjust enrichment/restitution; (4) money had and received; (5) violation of the Electronic Fund

2

Transfers Act ("EFTA") (Regulation E); and (6) violation of New York General Business Law ("GBL") § 349. (Dkt. No. 1.)

  **B.**  **Summary of Parties' Briefing on the Bank's Motion**

    **1.**  **The Bank's Memorandum of Law**

  Generally, in support of its motion to dismiss, the Bank sets forth five arguments. (Dkt. No. 17-8.)

  First, the Bank argues that the Complaint does not sufficiently state a claim for breach of contract. (*Id.* at 3-19.) More specifically, the Bank argues that Plaintiff does not sufficiently allege that a breach of contract occurred based on the APPSN or ATM/one-time debit card transactions for three reasons: (1) Plaintiff's Complaint does not allege that he did not receive a Regulation E Opt-In contract or that Trustco breached the terms of the Regulation E Opt-in contract, and, even if the Complaint did so, the claim must fail because Plaintiff never alleges that he entered into a Regulation E Opt-In contract (*id.* at 5-6);[1] (2) Plaintiff's checking account statements and overdraft fee notices confirm that the Bank did not charge OD fees on APPSN or ATM/one-time debit card transactions (*id.* at 6-9); and (3) even if the Bank assessed the OD fees, the Bank's account documents unambiguously state that it will assess OD fees depending on whether sufficient funds exist in the account when a transaction is settled or posted, thereby authorizing the challenged conduct (*id.* at 10-13). The Bank further argues that Plaintiff does not sufficiently allege that the Bank breached the contract by allegedly charging NSF fees on re-

---

[1]  The Bank notes that Exhibit C to Plaintiff's Complaint is "represented to be Trustco's Opt-In Agreement." (Dkt. No. 17-8, at 13.) The Bank argues that, because "Plaintiff does not allege that he did, in fact, opt-in, the document and the fees it permits for ATM and debit card transactions do *not* apply to Plaintiff's account." (*Id.*)

presented payment for two reasons: (1) Plaintiff's Complaint does not allege that the Bank charged Plaintiff NSF fees on any re-presented payment (*id.* at 9-10); and (2) the relevant account documents unambiguously allow the Bank to charge multiple NSF fees on the same re-presented payment, and therefore Plaintiff's allegations cannot constitute a breach of contract (*id.* at 13-19).

Second, the Bank argues that Plaintiff fails to state a claim for breach of the implied covenant of good faith and fair dealing, because he does not allege facts independent of or separate from the breach-of-contract claim. (*Id.* at 19-20.) More specifically, the Bank argues that, because Plaintiff does not plausibly suggest that the Bank complied with the literal terms of the Account Disclosure Notice but plausibly suggests that the Bank acted in a way to undermine the purpose of the contract so as to deprive Plaintiff of a right under the agreement, he cannot state a separate cause of action for breach of the implied covenant of good faith and fair dealing. (*Id.* at 20.)

Third, the Bank argues that Plaintiff fails to state a claim for unjust enrichment, restitution, and money had and received, because these claims are merely duplicative of his breach-of-contract claim. (*Id.* at 20-21.)

Fourth, the Bank argues that Plaintiff fails to state a claim for violation of the EFTA (Regulation E), because he never alleges that he opted into a Regulation E Opt-In contract. (*Id.* at 21.) The Bank also argues that the Regulation E claim is time barred, because it is subject to a one-year statute of limitations, which runs from the date of the occurrence of the first violation. (*Id.*)

Fifth, the Bank argues that Plaintiff fails to state a claim for violation of New York GBL

§ 349 for two reasons: (1) Plaintiff does not allege an act or practice that was misleading in a material respect separate and apart from allegations that the Bank breached the contractual agreements (*id.* at 22-23); and (2) Plaintiff does not allege that he saw, read, or relied upon misrepresentations made by the Bank because he does not allege to have read any of the relevant account documents and his Complaint does not include factual allegations regarding what Plaintiff relied upon in forming that misrepresentation (*id.* at 23).

### 2.    Plaintiff's Opposition Memorandum of Law

Generally, in opposition to the Bank's motion to dismiss, Plaintiff sets forth ten arguments. (Dkt. No. 22.)

First, Plaintiff argues that the overdraft promises in the account documents support Plaintiff's allegations regarding OD fees assessed on APPSN transactions. (*Id.* at 7-15.) More specifically, Plaintiff argues that, at the moment that the Bank authorizes a debit card transaction, it places a "debit hold" on the account (i.e., it reduces the account's available balance, places a hold on funds in the amount of the transaction, and therefore makes those funds off-limits for other transactions). (*Id.* at 4-6.) Plaintiff argues that a sentence-by-sentence analysis of the "Available Balance" section of the Account Disclosure Notice confirms that it bars OD fees on the APPSN transactions, because the provision states that (1) the "available balance" is the balance used to determine overdrafts," (2) the funds are immediately placed on "hold" and removed from the available balance for debit card transactions, (3) the "hold" endures for three days and expires at the end of three days only if a transaction has not yet settled, and (4) before the end of the three-day window, the "hold" remains in place "from the time of the authorization to the time the match authorization transaction is paid from [the]

account." (*Id.* at 8-9.)[2] Plaintiff argues that the only possible conclusion from this language is that for debit card transactions that *do* settle before three days—like those Plaintiff identifies in his Complaint—the holds have *not* expired and stand ready to be applied to the debit card transaction for which they were initially held. (*Id.* at 9.) Plaintiff also argues that the account documents bar OD fees on APPSN transactions because the Bank repeatedly promises that it determines overdrafts when it decides to "authorize and pay" debit card transactions, which is a promise to accountholders that "authorization" is coterminous with "payment" and is the key moment when the Bank determines overdraft fees on debit cards, rather than that moment being at the time of settlement. (*Id.* at 9-12.)

Second, Plaintiff argues that the Schedule of Service Charges (or "Fee Schedule"), which the Account Disclosure Notice identifies as the document listing all fees, bars multiple NSF fees on the same re-presented payment. (*Id.* at 12-15.) Plaintiff argues that the Account Disclosure Notice likewise permits only one fee on the same "item." (*Id.* at 13.) Plaintiff argues that an "item" is the same "item" no matter how many times it is submitted or returned, which is the only meaning consistent with the Nacha Rules, the New York Uniform Commercial Code, and standard industry usage. (*Id.* at 13-15.) Plaintiff argues that the Bank promised him that it would assess a single fee when he sought to make a single ACH payment or wrote a single check, even if the merchant attempted to collect those funds multiple times. (*Id.* at 13.) Plaintiff argues that, at best, the Account Disclosure Notice is ambiguous and therefore the Court must deny the

---

[2]      Plaintiff additionally argues that he believes he will eventually be able to move for summary judgment, based on the following sentence from the Account Disclosure Notice: "We will consider checks, other transactions made using your checking account number, or automatic bill payments *to be insufficient funds items if the available funds are not sufficient to cover the amount of the transaction*." (Dkt. No. 22, at 8.)

motion. (*Id.* at 15.)

Third, Plaintiff argues that more than forty courts across the country have rejected the Bank's position on NSF fees. (*Id.* at 15-17.) Plaintiff argues that, in the past eighteen months, fourteen federal courts, including six in the Second Circuit, have denied motions to dismiss that turn on identical fee practices. (*Id.*)

Fourth, Plaintiff argues that the Fee Schedule's use of the same language for an OD Fee and an NSF fee further supports Plaintiff's interpretation of the contractual agreement as providing that the Bank may charge only one NSF fee per "item," no matter how many times the item is processed. (*Id.* at 17-18.) Plaintiff argues that, in using identical "Per Item Fee" language to discuss both NSF fees and OD fees, the Bank reasonably promised that returned items and overdraft items are each subject to the same fee jeopardy—namely, that each can incur a single bank fee. (*Id.*)

Fifth, Plaintiff argues that other courts have already rejected the Bank's arguments regarding the relevant contractual language. (*Id.* at 18-21.) Plaintiff argues that the Bank ignores the Fee Schedule, which contains the "per item fee" promise, and instead relies solely on an alleged provision in the Account Disclosure Notice that it claims "expressly" discloses that the Bank will assess a new NSF fee "each time" an item is processed. (*Id.* at 18.) Plaintiff argues that the language on which the Bank relies is not a disclosure to assess multiple fees on the same item when it is repeatedly returned unpaid, but rather focuses on overdrafts. (*Id.* at 18-19.) Plaintiff argues that only "paying" an item creates an overdraft, whereas returning an item unpaid does not do so, and that Plaintiff complains only about the items that were not paid into overdraft (i.e., that were rejected unpaid). (*Id.*) Plaintiff argues that, because an overdraft is not

equivalent to a returned item—the focus of Plaintiff's allegation regarding NSF fees—the sentence relied upon by the Bank is irrelevant. (*Id.*) Plaintiff argues that the Bank's reading of the "each time" provision in the Account Disclosure Notice cannot be correct, because it would conflict with the "per item" provision in the Fee Schedule. (*Id.* at 19.)

Sixth, Plaintiff argues that he sufficiently alleges improper fee maximization practices in his Complaint. (*Id.* at 22-24.) More specifically, Plaintiff argues that, in his Complaint, he challenges two fee maximizing practices in which the Bank allegedly engages, and that, while some courts require a class representative to have been victimized by each specific conduct alleged, others reserve that analysis until a motion for class certification. (*Id.* at 22.) Plaintiff argues that, to the extent the allegations suffice regarding either of the two fee-maximizing practices, the case should go forward to class certification with regard to both, because it is the same contract and same algorithm applied uniformly against all of the Bank's customers that automatically determines whether to assess the OD fees and NSF fees. (*Id.* at 23.) Plaintiff additionally argues that, not only are the Bank's account statements complicated and not in compliance with the Fee Schedule, but Plaintiff requested certain information from the Bank that it did not provide. (*Id.* at 23-24.) Plaintiff argues that, to the extent the Bank requests the Court make factual determinations regarding jurisdictional issues of standing, the Court should grant Plaintiff the discovery he requests and deem the Bank's evidence inadmissible. (*Id.*)

Seventh, Plaintiff argues that his claim for breach of the covenant of good faith and fair dealing is not precluded for two reasons: (1) under New York law, a defendant who complies with the literal terms of the parties' contract may nevertheless be liable for breaching its implicit duties if it acts in a way that undermines the purpose of the contract; and (2) courts have

consistently held that analogous allegations sufficiently state claims for breach of the implied covenant. (*Id.* at 24.)

Eighth, Plaintiff argues that he sufficiently pled a violation of the common-law counts, because Fed. R. Civ. P. 8(d) permits him to plead alternative and even inconsistent legal theories, such as breach of contract and unjust enrichment, even if he can recover under only one of these theories. (*Id.* at 24, n. 9.)

Ninth, Plaintiff argues that he sufficiently pled factual allegations to state a GBL § 349 claim. (*Id.* at 25.) More specifically, Plaintiff argues his Complaint alleges more than facts regarding contract interpretation by including allegations that the Bank engaged in deceptive business acts and practices under the GBL. (*Id.*) Plaintiff argues that he may assert both a breach-of-contract claim and GBL § 349 claim in his Complaint. (*Id.*)

Tenth, Plaintiff requests leave to amend his Complaint if the Court determines it should grant the Bank's motion. (*Id.*)

### 3.    The Bank's Reply Memorandum of Law

Generally, in reply to Plaintiff's opposition, the Bank sets forth five arguments. (Dkt. No. 26.)

First, the Bank argues that the Court may review and rely upon the following documents when deciding its motion to dismiss: Plaintiff's account statements and notices of insufficient funds; the Account Disclosure Notice; the Overdraft Fee Disclosure and Schedule of Service Charges; the Online Banking Disclosure; the Mobile Banking Disclaimer; the Notice of Online Banking and Mobile App Upgrade; and the Nacha Rules. (*Id.* at 1-2.) The Bank argues that Plaintiff attached these documents to the Complaint as an exhibit, the Complaint incorporated

them by reference, and that the documents were integral in drafting the Complaint. (*Id.*)

Second, the Bank argues that it met its burden of establishing that the account documents clearly notified Plaintiff that multiple OD/NSF fees could be charged each time a transaction was re-represented for payment and returned due to insufficient funds. (*Id.* at 2-5.) More specifically, the Bank argues that the account documents are unambiguous, even absent consideration of the Nacha rules. (*Id.* at 2.) The Bank argues that the Account Disclosure Notice must be read in conjunction with the Fee Schedule, and that the Account Disclosure Notice states that the Bank "will charge a fee *each time* [it] pay[s] or return as unpaid an overdraft" and that "insufficient funds items" are "*all orders and instructions* for the payment, transfer, or withdraw of funds from your account." (*Id.* at 3 [emphasis in original].) The Bank argues that this language from the Account Disclosure Notice distinguishes this case from those cited by Plaintiff. (*Id.* at 3-4.) The Bank argues that, taken together, the language in the Account Disclosure Notice provides clear notice to an accountholder that a fee will be assessed *each time* the Bank returns as unpaid a request for payment when there are not sufficient funds to pay. (*Id.* at 5-6.)[3]

Third, the Bank argues that the Court should dismiss Plaintiff's claim for breach of the implied covenant of good faith and fair dealing because this claim is duplicative of his breach-of-contract claim. (*Id.* at 6-7.)

Fourth, the Bank argues that the Court should dismiss Plaintiff's claim for unjust enrichment because, absent a legitimate dispute regarding the enforceability of a contract, he

---

[3]     The Bank additionally argues that the Court may consider the Nacha Rules in conjunction with the account documents, as well as take judicial notice of them, because the Bank expressly incorporates the Rules into the account documents' terms and conditions. (Dkt. No. 26, at 5.)

cannot state a claim for unjust enrichment. (*Id.* at 7-8.)

Fifth, and finally, the Bank argues that the Court should dismiss Plaintiff's GBL § 349 claim because Plaintiff relies on the same set of facts supporting his breach-of-contract claim and fails to allege separate damages for these two claims. (*Id.* at 8.)

## II.    RELEVANT PROCEDURAL LEGAL STANDARDS

### A.    Legal Standard Governing a Motion to Dismiss for Failure to State a Claim

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added).  In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp.2d at 212, n. 20 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513-514 (2002)).  On

the other hand, the Supreme Court has held that, by requiring the above-described "showing,"

the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement

that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which

it rests." *Id.* at 212, n.17 (emphasis added).[4]

The Supreme Court has explained that such *fair notice* has the important purpose of

"enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper

decision on the merits" by the court. *Id.* at 212, n.18 (citing Supreme Court cases); *Rusyniak v.

Gensini,* 629 F.Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit

cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading

standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). "As

a result, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has

failed to meet this liberal notice pleading standard." *Rusyniak,* 629 F.Supp.2d at 214; *Ashcroft v.

Iqbal*, 556 U.S. 662, 677-83, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an

appellate decision holding that a complaint had stated an actionable antitrust claim under 15

U.S.C. § 1. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007). In doing so, the

Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46

(1957), that "a complaint should not be dismissed for failure to state a claim unless it appears

beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of

---

[4]      *Accord, Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (Munson, J.); *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998); *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y.1995) (McAvoy, C.J.).

an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim.  *Id*. at 1965-74.  The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]."  *Id*. at 1965.  More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true.  *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S.Ct. at 1949 (2009).  "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . .  [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief."  *Iqbal*, 129 S.Ct. at 1950 (internal quotation marks and citations omitted).  However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement."  *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice."  *Iqbal*, 129 S. Ct. at 1949.  Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement"

will not suffice.  *Id.* (internal citations and alterations omitted).  Rule 8 "demands more than an

unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* (citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a

dismissal for failure to state a claim is contemplated.  Generally, when contemplating a dismissal

pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the

four corners of the complaint may be considered without triggering the standard governing a

motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer,

(2) documents incorporated by reference in the complaint (and provided by the parties), (3)

documents that, although not incorporated by reference, are "integral" to the complaint, or (4)

any matter of which the court can take judicial notice for the factual background of the case.[11]

### B.      Legal Standards Governing a Motion to Amend a Pleading

A motion for leave to amend a complaint is governed by Fed. R. Civ. P. 15, which states

---

[11]     *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . .  However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.")

[internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

that leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2);

*Foman v. Davis*, 371 U.S. 178, 182 (1962); *Manson v. Stacescu*, 11 F.3d 1127, 1133 (2d Cir.

1992). Pursuant to Fed. R. Civ. P. 15(a)(2), leave to amend a complaint should be freely given

"[i]n the absence of any apparent or declared reason to not grant leave to amend[,] such as undue

delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies

by amendments previously allowed, undue prejudice to the opposing party by virtue of

allowance of the amendment, [or] futility of the amendment . . . ." *Foman*, 371 U.S. at 182; *S.S.*

*Silberblatt, Inc. v. E. Harlem Pilot Block-Bldg. 1 Hous.*, 608 F.2d 28, 42 (2d Cir. 1979); *Meyer v.*

*First Franklin Loan Servs., Inc.*, 08-CV-1332, 2010 WL 277090, at *1 (N.D.N.Y. Jan. 19, 2010)

(Suddaby, J.); *Jones v. McMahon,* 98-CV-0374, 2007 WL 2027910, at *10 (N.D.N.Y. July 11,

2007) (Lowe, M.J.). "An amendment to a pleading is futile if the proposed claim could not

withstand a motion to dismiss . . . ." *Annunziato v. Collecto, Inc.*, 293 F.R.D. 329, 333 (E.D.N.Y.

2013) (citing *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002)).

## III.   ANALYSIS

### A.   Whether the Court May Dismiss Plaintiff's Claim for Breach of Contract

After carefully considering the matter, the Court answers the question in the negative to

the extent the claim is based on Plaintiff's allegations regarding OD fees on APPSN transactions

and the assessment of multiple NSF fees on the same re-presented payment, but in the

affirmative to the extent the claim is based on Plaintiff's allegations regarding the improper

software upgrade in August 2020 to September 2020.

Under New York law, to survive a motion to dismiss a breach-of-contract claim,

Plaintiff's Complaint must allege facts that plausibly suggest "(1) the existence of an agreement,

(2) adequate performance of the contract by the plaintiff, (3) breach of the contract by the defendant, and (4) damages." *Habitzreuther v. Cornell Univ.*, 14-CV-1229, 2015 WL 5023719, at *5 (N.D.N.Y. Aug. 2015) (Sharpe, J.). "New York law follows the common law rule that in interpreting a contract, the intent of the parties governs, and therefore, a contract should be construed so as to give full meaning and effect to all of its provisions." *PaineWebber Inc. v. Bybyk,* 81 F.3d 1193, 1199 (2d Cir. 1996) (citation and internal quotation marks omitted). "Under New York law[,] the initial interpretation of a contract is a matter of law for the court to decide" and "[i]ncluded in this initial interpretation is the threshold question of whether the terms of the contract are ambiguous." *Alexander & Alexander Servs., Inc. v. These certain Underwriters at Lloyd's, London, England*, 136 F.3d 82, 86 (2d Cir. 1998) (internal quotation marks and citation omitted).

"Ambiguity does not exist when contract language has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself and concerning which there is no reasonable basis for a difference of opinion.'" *Richard v. Glens Falls Nat'l Bank*, 20-CV-0734, 2021 WL 810218, at *7 (N.D.N.Y. Mar. 3, 2021) (Sannes, J.) (quoting *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989)). "Conversely, [a] contract is ambiguous when it is reasonably susceptible of more than one interpretation." *Richard*, 2021 WL 810218, at *7 (internal quotation marks omitted). Courts may dismiss breach-of-contract claims on a Rule 12(b)(6) motion to dismiss where the language is "clear and unambiguous"; however, "a plaintiff's claim should not be dismissed if she 'has an arguable claim under the contract.'" *Id.* (quoting *Hermant Patel M.D., P.C. v. Bandikatla*, 18-CV-10227, 2019 WL 6619344, at *2 (S.D.N.Y. Dec. 5, 2019)).

In his Complaint, Plaintiff alleges the Bank breached the relevant account documents when engaging in the following three practices: (1) assessing OD fees on APPSN transactions (Dkt. No. 1, at ¶¶ 15-59); (2) assessing multiple NSF fees on the same electronic transactions or checks when reprocessed again after initially being returned for insufficient funds (*id.* at ¶¶ 55-68); and (3) mishandling a software upgrade to mobile banking in August 2020 to September 2020, which caused consumers to incur multiple NSF fees and/or OD fees (*id.* at ¶¶ 103, 114).

### 1. Overdraft Fees on APPSN Transactions

With respect to Plaintiff's allegations regarding OD fees on APPSN transactions, the Bank argues that Plaintiff failed to sufficiently allege a breach of contract for two reasons: (1) Plaintiff's checking account statements and overdraft fee notices show that the OD fees Plaintiff cites in his Complaint were not the result of a one-time debit card transaction or APPSN transaction; and (2) the Bank's account documents unambiguously show that Trustco will assess OD fees based on whether sufficient funds exist in the account when a transaction is settled or posted.[5] (Dkt. No. 17-8, at 6-9, 10-13.)

Because the Bank's first argument requires review of Plaintiff's account statements and

---

[5]     The Bank additionally argues that Plaintiff's breach-of-contract claim must fail because his Complaint does not allege that he did not receive a Regulation E Opt-In contract or that Trustco breached the terms of the Regulation E Opt-In contract, and, even if the Complaint did so, the claim must fail because Plaintiff never alleges that he entered into a Regulation E Opt-In contract. (Dkt. No. 17-8, at 5-6.) The Court addresses arguments related to the Regulation E claim in a separate section of this Decision and Order but notes that Plaintiff's breach-of-contract claim regarding OD fees on APPSN transactions also includes references to the Account Disclosure Notice—an agreement into which Plaintiff affirmatively entered. (Dkt. No. 1, ¶¶ 102-03 ["Plaintiff and each of the Class Members entered into an Account Agreement with Defendant covering the subject of overdraft transactions."; "Nowhere did the Account Agreement state that Defendant would sequester money upon authorization for a transaction and not allow it to be used for anything else, but then charge an overdraft fee at the time of the posting of the same transaction when there had been enough money to cover the transaction when the money had been sequestered for it."].)

overdraft fee notices (*id.* at 6-9), the Court preliminarily addresses when it may properly rely upon extraneous documents when deciding a motion under Fed. R. Civ. P. 12(b)(6). "For purposes of a motion to dismiss, [the Second Circuit] [has] deemed a complaint to include . . . documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rothman v. Gregor*, 220 F.3d 81, 88-89 (2d Cir. 2000). In his Complaint, Plaintiff identified specific dates and charges that he alleges constituted improper OD fees on APPSN transactions in violation of the account documents. (Dkt. No. 1, at ¶ 54.) Plaintiff would not have been able to identify these OD fees without reference to the account statements and overdraft fee notices.

Importantly, however, "'even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.'" *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)). As an exhibit to his opposition motion, Plaintiff included a document titled "Objections to Attorney Declaration, Reliance Upon Unauthenticated and Inadmissible Exhibits, and Opinion Testimony Offered by Defendant's Attorneys-Lay Witnesses." (Dkt. No. 22-1.) In that exhibit, Plaintiff objects to the account statements and notices under various Federal Rules of Evidence, including Fed. R. Evid. 901 (i.e., lack of authentication), and also objects to all statements in the Bank's motion relating to those documents as "lacking foundation and improper lay witness testimony." (*Id.*)

The Court finds it need not make a specific determination as to whether, in this instance, it may rely on the account statements and overdraft fee notices in deciding the Bank's motion, because, even if the Court reviewed these documents, it would not be inclined to dismiss

18

Plaintiff's breach-of-contract claim with respect to OD fees on APPSN transactions based on the

Bank's first argument. The Court cannot discern, from the account statements and overdraft fee

notices alone, the verity of the Bank's contention that the OD fees are not the result of one-time

debit card or APPSN transactions. Rather, the Court must rely on the Bank's counsel's

representations regarding how to interpret each of the account statements on fact-intensive

issues,[6] including when the Bank posted the disputed fees and on what type of transaction the

Bank assessed that fee. The Court declines to engage in this fact-intensive inquiry, especially

when the inquiry is based solely on the Bank's counsel's representations, in deciding a motion to

dismiss.[7]

In the alternative, the Bank argues that its account documents unambiguously provide

that it will assess OD fees based on whether sufficient funds exist in the account when a

transaction is *settled* or *posted*, and therefore that assessment of the disputed OD fees did not

violate the account documents. (Dkt. No. 17-8, at 10-13.) As support for this argument, the Bank

points to the following language in the Account Disclosure Notice:

> AVAILABLE BALANCE – Your available balance is the most
> current record the bank has of the amount you are able to withdraw
> from your account. This does not reflect any checks or ACHs you

---

[6]     The Bank did not submit a declaration or affidavit from an account custodian or other
Bank representative explaining how to interpret the account statements or overdraft fee notices.
Rather, the Bank's counsel (who does not appear to have been involved in the transaction)
attempts to explain these issues, on his own, within the motion to dismiss. (Dkt. No. 17-8, at 6-
9.)

[7]     *See Nourse v. Cty. of Jefferson*, 17-CV-0807, 2018 WL 2185504, at *2, n. 1 (N.D.N.Y.
May 11, 2018) (Sannes, J.) ("Given the fact-sensitive nature of Plaintiff's claim, and since
discovery has not yet commenced, the Court declines to convert Defendant's motion to one for
summary judgment."); *Madu, Edozie & Madu, P.C. v. Socketworks Ltd. Nigeria*, 265 F.R.D.
106, 124 (S.D.N.Y. 2010) ("The court also declines to convert the instant motion into a motion
for summary judgment since discovery has not yet commenced.").

> have authorized or other items that have not been paid from your
> account. *Please know that it is possible to overdraw your account
> even though the available balance shows sufficient funds.* For all
> debit card purchases, we are permitted to place a temporary hold
> against some or all of the funds in the account. This hold on your
> account will be subtracted from your available balance. We are
> permitted to place this hold on your account for up to three
> business days from the time of the authorization to the time the
> matched authorization transaction is paid from your account. If the
> transaction is not submitted within the 3 days, we will release the
> hold and your available balance will increase. *Once the transaction
> is submitted properly by the merchant*, it will be posted to your
> account . . . .

(*Id.* [emphasis in original]; Dkt. No. 1-1, at 3-4.)[8] The Bank argues that this language identifies

the possibility of overdrawing the account, even with sufficient funds, and that it distinguishes

between when a transaction is authorized and it "is paid" and "posted" to the customer's

account. (Dkt. No. 17-18, at 11.) The Bank argues that the language also clearly indicates that,

for transactions taking more than three days to settle, the Bank will release the funds back into

the account—something Plaintiff should have monitored to avoid the risk of spending the funds

before the transaction settled. (*Id.*)

Plaintiff highlights, however, that a sentence-by-sentence analysis of this portion of the

Account Disclosure Notice shows that, when debit card transactions *do* settle before three

days—as Plaintiff alleges they did—the holds have *not* expired, the funds are ready to be applied

to the debit card transaction for which they were initially held, and there accordingly is no need

for an OD fee. (Dkt. No. 22, at 7-9.)[9] Plaintiff cites the Overdraft Disclosure[10] as support for its

---

[8]     The Court may consider the Account Disclosure Notice and Overdraft Disclosure when
deciding the motion to dismiss because Plaintiff attached them as Exhibits to his Complaint.
(Dkt. No. 1-1, 1-2.)

[9]     *See Hash v. First Fin. Bankcorp*, 20-CV-1321, 2021 WL 859736, at *4 (S.D. Ind. Mar. 8,
2021) ("[Plaintiff] argues that, while the section warns that a certain type of APPSN transaction
can incur an overdraft fee, it does so only in the limited circumstance of when the hold expires

position that authorization is the key moment when the Bank determines OD fees, because the Overdraft Disclosure shows the Bank uses "authorize" and "payment" coterminously. (*Id.* ["We do not *authorize and pay* overdrafts for the following types of transactions unless you ask us to: ATM transactions; everyday debit card transactions."] [citing Dkt. 1-3].) The Court also notes that the Account Disclosure Notice, which neither party refutes applies to Plaintiff's account, includes similar language in its "ATM/DEBIT CARD" section. (Dkt. No. 1-1, at 4 ["ATM transactions and everyday debit card transactions will be declined and will not be considered insufficient funds items unless you ask us to *authorize and pay* these types of overdrafts."] [emphasis added].)

Like other courts addressing similar arguments, the Court finds that the language in the relevant account documents is ambiguous, because both parties' interpretations of the disputed language is reasonable. *See Kelly v. Cmty. Bank, N.A.*, 19-CV-0919, 2020 WL 777463, at *6 (N.D.N.Y. Feb. 18, 2020) (D'Agostino, J.) ("Because this material term is subject to more than one reasonable interpretation, it is ambiguous."). The Court recognizes that the Account Disclosure Notice includes language regarding the possibility of overdrafting the account, even if the available balance shows sufficient funds. However, based on the provision as a whole, it is reasonable for Plaintiff to assume that, if the debit hold is placed on funds *at the time of authorization* and settled within three days (i.e., when the funds have not yet been re-released

---

before the transaction settles. That isn't the only way an APPSN transaction can occur, and that wasn't the type of APPSN transaction [Plaintiff] experienced. The hold on [Plaintiff's] positively authorized transactions never expired but were nevertheless charged with an overdraft fee when they settled.").

[10]     The parties both identify this document as the Opt-In Contract addressed in various portions of Plaintiff's Complaint and the briefing on the current motion. (Dkt. No. 17-8, at 13; Dkt. No. 22, at 10.)

into the account), there is no need for an OD fee. (Dkt. No. 22, at 7-9.) *See Varga v. Am. Airlines Fed. Cred. Union*, 20-CV-4380, 2020 WL 8881747, at *4 (C.D. Cal. Dec. 1, 2020) ("While it is clear that a consumer must have funds to '*pay* any withdrawal order,' a consumer could still think there was a sufficient amount in the account if there were positive funds when [the bank] placed a preauthorization holds on the funds—as that seems to be the very purpose of the hold.").[11]

Likewise, the Account Disclosure Notice's coterminous use of "authorize and pay," which is also found in the Overdraft Disclosure, obfuscates the distinction the Bank attempts to make between "authorization" and "payment" when arguing that OD fees are assessed based on when the transaction is "settled" or "posted." This interpretation is supported by the fact that "a reasonable consumer likely considers something to have been paid for when they swipe their debit card, not when their bank's back-office operations are completed." *Roberts v. Capital One, N.A.*, 719 F. App'x 33, 36 (2d Cir. 2017) (summary order).[12]

---

[11]    (*See also* Dkt. No. 22-16, at 6-7 ["This language expressly promises that Scott will place holds on the funds at the time of the authorization of the debit card transaction, which is when Plaintiff paid the merchant, and that these holds reduce Plaintiff's available balance. Plaintiff asserts that these funds must be used to settle the transaction for which they were held, and that these funds cannot be used for other, subsequent transactions. The Court finds that this is a reasonable interpretation of the Contract, especially considering the Federal Reserve Board has stated that the entire point of the hold is to ensure that the funds remain available to settle the transaction."] [quoting *Darty v. Scott Credit Union*, No. 19-L-0793 (Cir. Ct. Ill., St. Clair Cnty. June 24, 2020)].)

[12]    *See also Kelly*, 2020 WL 777463, at *6 (finding that language stating that the bank "may, at its discretion, *authorize and pay* certain overdraft items when [the customer] do[es] not have sufficient available funds" was ambiguous, as it was "equally reasonable" to interpret this language as meaning overdraft fees were assessed at the time the bank elected to make the payment or at the time of settlement of the transaction); *Hash*, 2021 WL 859736, at *5 (holding that "terms link[ing] authorization with paying overdrafts" do not "help the customer understand whether overdrafts are determined at the time of authorization or settlement"). (Dkt. No. 22-16, at 10 ["The Court finds that Defendant's use of language linking authorization to payment can be reasonably interpreted to mean that transactions are paid, and therefore overdrafts are

22

Because the Court may not grant a motion to dismiss on a breach-of-contract claim when the contract is not "clear and unambiguous," *Richard*, 2021 WL 810218, at \*7, the Court will not dismiss Plaintiff's breach-of-contract claim related to the OD fees on APPSN transactions.

### 2.   Multiple NSF Fees on Same Re-Presented Payment

The Bank also seeks dismissal of Plaintiff's breach-of-contract claim regarding the assessment of multiple NSF fees on re-presented payments for two reasons: (1) his Complaint does not allege that the Bank charged him NSF fees on any re-presented payment; and (2) the relevant account documents unambiguously allow the Bank to charge multiple NSF fees on the same re-presented payment, meaning Plaintiff's allegations cannot constitute a breach of contract. (Dkt. No. 17-8, at 9-10, 13-19.)

### a.   Standing to Pursue Breach-of-Contract Claim on NSF Fees

In his Complaint, Plaintiff includes the following sentence as factual support for his breach-of-contract claim related to the Bank allegedly charging multiple NSF fees on re-presented payments: "Upon information and belief, and as Defendant's business records will show, on Plaintiff's account Trustco: (a) reprocessed a previously declined item; and (b) charged a fee upon reprocessing." (Dkt. No. 1, at ¶ 58.) Unlike his breach-of-contract claim related to OD fees on APPSN transactions, which was supported by factual allegations regarding specific dates of charges on transactions that Plaintiff alleges violated the account documents, this claim did not identify any disputed transactions showing that the Bank charged him NSF fees on re-presented payments.

---

determined, at authorization because a reasonable consumer likely considers something to have been paid for when they swipe their debit card, not when their bank's back-office operations are completed."].)

The Bank argues that this pleading does not meet the *Twombly-Iqbal* standard, and therefore should be dismissed. (Dkt. No. 17-8, at 9-10.) Plaintiff, on the other hand, argues that this issue should be reserved for the class certification stage, rather than decided on a motion to dismiss. (Dkt. No. 22, at 22 ["While some courts across the country have indeed held that a class representative needs to have been victimized by each specific conduct alleged, others reserve the analysis until a motion for class certification."].) Plaintiff argues that, "to the extent that the allegations suffice regarding either of the two fee-maximizing practices, the case should go forward with regard to both, as it is the same contract and the same algorithm [that] applied uniformly against all the Bank's customers . . . ." (Dkt. No. 22, at 23.)[13]

In *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, the Second Circuit addressed the relationship between an individual's Article III standing and class standing:

> [D]istilling these cases down to a broad standard for class standing, we believe they stand collectively for the proposition that, in a putative class action, a plaintiff has class standing if he plausibly alleges (1) that he 'personally has suffered some actual . . . injury as a result of the putatively illegal conduct of the defendant', and (2) that such conduct implicates 'the same set of concerns' as the conduct alleged to have caused injury to other members of the putative class by the same defendants . . . .

693 F.3d 145, 162 (2d Cir. 2012). In so doing, the Court further articulated the following:

> [W]hether NECA has 'class standing'—that is, standing to assert claims *on behalf* of purchasers of Certificates from other offerings, or from different tranches of the same Offering—does not turn on

---

[13]    The Bank also argued that the Court should not dismiss Plaintiff's claim on this ground because the account statements are "immensely complicated and not in compliance with the wording of its own Fee Schedule, making the[m] practically indecipherable to any reasonable consumer . . . ." (Dkt. No. 22, at 23.) The Court is not persuaded by this argument, because Plaintiff's counsel, who represent the plaintiffs in *Livingston v. Trustco Bank*—the lead case against the Bank regarding the same allegations—reviewed those plaintiffs' account statements and found specific instances of the Bank charging multiple NSF fees on re-presented payments.

whether NECA would have statutory or Article III standing to seek recovery for misleading statements in those Certificates' Offering Documents. NECA clearly lacks standing to assert such claims on its behalf because it did not purchase those Certificates. Because the class standing analysis is different, the district court erred in concluding, based on the fact that NECA purchased just two "particular . . . [C]ertificate[s] from . . . particular tranche[s] from . . . particular [T]rust[s]' that it necessarily lacked standing to assert claims *on behalf of* purchasers of Certificates from other Trusts and from other tranches . . . .

*NECA-IBEW*, 693 F.3d at 158 (emphasis in original).

While many cases discussing this standing issue address whether the purchase of a certain product permits the plaintiff to have class standing with respect to other products they did not purchase, the Court nonetheless finds these cases informative. *See Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 542 (S.D.N.Y. Aug. 7, 2013); *Buonasera v. Honest Co.*, 208 F. Supp. 3d 555, 561-63 (S.D.N.Y. Sept. 23, 2016); *Reid v. GMC Skin Care USA, Inc.*, 15-CV-0277, 2016 WL 403497, at *3-4 (N.D.N.Y. Jan. 15, 2016) (Sannes, J.). In *Reid v. GMC Skin Care USA, Inc.*, for example, the defendant "argue[d] that the Plaintiffs, who did not claim to have purchased anything but the [defendant's] eye cream, lack[ed] both Article III and class standing to assert claims in connection with the serum, cream, gel-cream, and mask." *Reid*, 2016 WL 403497, at *3. The *Reid* court, quoting *NECA-IBEW*, highlighted that, "[t]o establish Article III standing in a class action[,] . . . for every named defendant there must be at least one named plaintiff who can assert a claim directly against that defendant, and at that point standing is satisfied and only then will inquiry shift to a class action analysis." *Id.* at *3. Finding that the plaintiffs had sufficiently alleged Article III standing with respect to the eye contour cream, the *Reid* court held that "Defendant's argument that Plaintiffs lack standing to pursue claims on behalf of purchasers of other Phyto Stem Cell+ products is, 'under *NECA-IBEW* . . . premature and should

be addressed at the class certification stage.'" *Id.* at *4 (quoting *Mosely v. Vitalize Labs, LLC*, 13-CV-2470, 2015 WL 5022635, at *7 (E.D.N.Y. Aug. 24, 2015)).

In this case, no party contests that Plaintiff has Article III standing[14] to assert the breach-of-contract claim against the Bank for the OD fees on APPSN transactions. Additionally, Plaintiff alleges misconduct—charging OD fees on APPSN transactions and charging multiple NSF fees on re-presented payments—against the same defendant, based on the same contract applying to all of the Bank's customers and allegations that the Bank's account documents misrepresent when (and under what circumstances) it charges certain fees to its customers. *See NECA-IBEW*, 693 F.3d at 162 ("[For] claims alleging injury based on misrepresentations, the misconduct alleged will almost always be the same: the making of a false or misleading statement. Whether that conduct implicates the same set of concerns for distinct sets of plaintiffs . . . depend[s] on the nature and content of the specific misrepresentation alleged.").[15] Although

---

[14]    To have Article III standing, "[f]irst, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not "conjectural" or "hypothetical . . . .'"" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations omitted). "Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not  . . . th[e] result of the independent action of some third party not before the court.'" *Lujan*, 504 U.S. at 560 (internal citations omitted). "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 561.

[15]    This case is dissimilar to *Doyle v. Mastercard Int'l Inc.*, for example, in which the Second Circuit disagreed with the plaintiff that "it was error to dismiss his putative class claim under the DCCPA prior to class certification." 700 F. App'x 22, 24 (2d Cir. 2017). In *Doyle*, the plaintiff did "not claim to have personally suffered an injury under the [DCCPA]," meaning he lacked standing to sue. *Doyle*, 700 F. App'x at 24. The Second Circuit held that, "[r]egardless of whether a class [was] certified for the purposes of a DCCPA claim, Doyle would lack standing to sue on its behalf because he allege[d] no injury under that (or any other consumer protection) statute. His alleged injury [w]as based on an entirely separate—and meritless—breach-of-contract theory." *Id.* at 25.

the Court makes no determination regarding whether Plaintiff is an adequate class representative on the NSF fee issue, the Court will not dismiss Plaintiff's breach-of-contract claim related to NSF fees on this ground at this time. *Reid,* 2016 WL 403497, at *3.[16]

### b. Account Documents' Language Regarding NSF Fees

The Bank also seeks dismissal of Plaintiff's breach-of-contract claim regarding multiple NSF fees on re-presented payments, because the Bank argues that the relevant account documents unambiguously permit this conduct. (Dkt. No. 17-8, at 13-18.) As the bases for its contention that it may charge multiple NSF fees on a re-presented payment, the Bank cites the following language from the Account Disclosure Notice, Retail Online Banking Agreement:[17]

> *Trustco Bank Retail Online Banking, Bill Paying, and Mobile Banking Agreement and Electronic Fund Transfers Disclosure Agreement:*

---

[16]     *See In re Frito-Lay N. Am., Inc. v. All Natural Litig.*, 12-MD-2413, 2013 WL 4647512, at *13 (E.D.N.Y. Aug. 29, 2013) ("In sum, because the plaintiffs have Article III standing, at this stage, they may press claims, on behalf of putative class members, arising out of products that the plaintiffs did not themselves purchase. Whether the plaintiffs' injuries are sufficiently similar to those of putative class members who purchased other products—and whether plaintiffs will therefore adequately represent the interests of the class—is a question the Court will consider on a Rule 23 certification motion."); *Neufeld v. Cigna Health & Life Ins. Co.*, 17-CV-1693, 2018 WL 4158377, at *8 (D. Conn. Aug. 30, 2018) ("The instant case involves equivalent allegations of material misrepresentation and concealment, which the court finds may be susceptible to similar generalized proof. Plaintiffs allege that Cigna's contracts are materially uniform insofar as they misrepresent the services of middlemen to inflate invoice prices."); *Chery v. Conduent Educ. Servs.,* 18-CV-0075, 2019 WL 1427140, at *8 (N.D.N.Y. Mar. 29, 2019) (Hurd, J.) ("Whether or not [Plaintiff] retains individual standing as to this declaratory judgment claim, he still has standing as a prospective class representative."); *Blessing v. Sirius XM Radio, Inc.*, 756 F. Supp. 2d 445, 452 (S.D.N.Y. 2010) ("[T]here is no question that named plaintiffs have standing to sue. The class certification process will address whether named plaintiffs' injuries are sufficiently similar to those of the proposed class to justify a nationwide class action . . . ."); *Ault v. J.M Smucker Co.*, 13-CV-3409, 2014 WL 1998235, at *7 (S.D.N.Y. May 15, 2014).

[17]     The Retail Online Banking Agreement incorporates by reference the Account Disclosure Notice. (Dkt. No. 17-8, at 13.)

29. Compliance. You and we agree to comply with (i) the Account Rules, and (ii) all applicable laws, regulations, rules and orders, including without limitation all applicable National Automated Clearing House Association ('Nacha') rules, regulations, and policies, the Uniform Commercial Code ('UCC'), the U.S. Department of the Treasury's Office of Foreign Asset Control ('OFAC') requirements, and all applicable laws, regulations, and orders administered by the U.S. Department of the Treasury's Financial Crimes Enforcement Network ('FinCEN').

*Account Disclosure Notice:*

Overdrafts: 'We will charge a fee *each time* we pay or return as unpaid an overdraft.'

ATM/Debit Card: 'We will consider checks, other transactions made using your checking account number, or automatic bill payments to be insufficient funds items if the available funds are not sufficient to cover the amount of the transaction. Insufficient funds items include all orders and instructions for the payment, transfer, or withdraw of funds from your account. . . . [W]e will charge you a fee for each insufficient funds item whether we pay, permit, return, decline or reject the item . . . .

*Schedule of Services Charges ["Fee Schedule"]*

Fees for overdrawing an account apply to an overdraft created by a check, in-person withdrawal, ATM withdrawal, or *other electronic means.*

(Dkt. No. 17-8, at 14 [emphasis in original].) Along with these portions of the account documents, the Bank references the Nacha Rules, which it states require it to accept re-presented payments and treat returned payments as new "entries." (*Id.* at 14-16.) The Bank argues that the Nacha Rules, read in conjunction with the Account Disclosure Notice, state that insufficient funds items include *all* orders and instructions for payment, and that, in *each* instance of an unpaid return, there will be an overdraft charge. (*Id.* at 16-17.)

28

Plaintiff, however, cites the following excerpt from the Fee Schedule[18] as support for his contention that the Bank may charge only one NSF fee, on a "per item" basis, rather than each time an item is presented (as the Bank argues):

| Additional Account Fees | Per Item Fee |
|---|---|
| Overdraft/Insufficient Fee - Personal Accounts* (Paid or returned) (No more than 5 fees per day) | $36 |

(Dkt. No. 22, at 12.)[19] Plaintiff also cites the last line of the above-excerpted portion of the Account Disclosure Notice as support for a "per item" charge: "Insufficient funds items include all orders and instructions for the payment, transfer, or withdraw of funds from your account . . . . we will charge you a *fee for each insufficient funds item* whether we pay, permit, return, decline or reject the item . . . ." (*Id.* at 13 [emphasis in original].) Plaintiff argues that an "item" is the same "item," whether it has been returned unpaid one time or multiple times, and that the Bank's interpretation of the Account Disclosure Notice conflicts with the language in the Fee Schedule. (*Id.* at 13, 18-21.)

The Court finds both interpretations reasonable, making the contract ambiguous and thus

---

[18]    The first page of the Account Disclosure Notice reads, as follows: "FEES – All fees are listed on the Schedule of Service Charges which is given to you with this disclosure." (Dkt. No. 1-3, at 3.)

[19]    Plaintiff additionally argues that the Bank's use of the same language in the Fee Schedule for an "overdraft fee" as an "NSF fee" supports Plaintiff's interpretation of NSF fees being charged once "per item." (Dkt. No. 22, at 17 ["In using identical 'Per Item Fee' language to discuss both NSF fees and OD fees, Trustco reasonably promises that *returned* items and *overdraft* items are each subject to the same fee jeopardy—namely, each can incur a single bank fee."].)

the claim arising from it is not subject to dismissal. *Richard*, 2021 WL 810218, at *7. As Plaintiff cites in his opposition, multiple courts, including those within the Second Circuit, have found the term "item" to be ambiguous within this context. (Dkt. No. 49-1, at 8-10.) For example, when addressing similar arguments regarding charging NSF fees on the same item, the Eastern District of New York found a material ambiguity that precluded dismissal of the claim:

> At bottom, Plaintiff's Complaint presents an issue of contractual interpretation—namely, whether the Account Agreements authorize Capital One to assess multiple "overdraft" and/or "non-sufficient funds" fees on transactions that the bank re-processes one or more times after issuing a return for insufficient funds. According to Capital One, the Account Agreements permit it to "charge a fee for *each item* returned in accordance with [its fee schedule]," and each request for payment constitutes a discrete 'item' subject to such fees—even where a request is simply being re-processed. Plaintiff, for his part, contends that "common sense and . . . industry usage of the term 'item'" dictate that an "'item' cannot become a new 'item' when Capital One returns and reprocesses it one or more times."

> Here, "[b]oth parties have offered reasonable interpretations" of the Account Agreements, . . . , and a "claim predicated on a materially ambiguous contract term is not dismissible on the pleadings."

*McNeil v. Capital One Bank, N.A.*, 19-CV-0473, 2020 WL 5802363, at *2 (E.D.N.Y. Sept. 29, 2020) (internal citations omitted).

The court in *Richard v. Glens Falls National Bank* likewise found the term "item" to be materially ambiguous:

> The Court finds that the Account Agreement is facially ambiguous. While the Fee Schedule provides for a $32 NSF Fee "per item,"

> the Account Agreement does not define the term "item." There is
> no provision making clear that a separate NSF fee may be charged
> for each presentment of the same transaction. The specific
> provisions Defendant relies on could reasonably be read as either
> authorizing Defendant to charge a single NSF fee for *each check,
> debit or other transaction* that is presented for payment, regardless
> of how many times a merchant unsuccessfully attempts to present
> the transaction (as Plaintiff urges), or as authorizing Defendant to
> charge an NSF fee *each time* a transaction is presented and
> returned for nonpayment (as Defendant urges).

*Richard*, 2021 WL 810218, at *11; *Petrey v. Visions Fed. Credit Union*, 20-CV-1147, 2021 WL 2364971, at *5 (N.D.N.Y. June 9, 2021) (D'Agostino, J.) ("Much like the courts in *Perks, Roy, McNeil, Chambers,* and *Coleman*, the Court here finds that the definition [of] 'item' and when items are 'presented' is ambiguous. It is unclear whether resubmission of an ACH transaction is part of the same initial ACH transaction or a separate transaction altogether."); *Chambers v. HSBC Bank USA, N.A.*, 19-CV-10436, 2020 WL 7261155, at *4 (S.D.N.Y. Dec. 10, 2020) ("Moreover, Defendant's argument that the Disclosures are unambiguous because they authorize an NSF fee for '*each* . . . item' that overdraws an account is unpersuasive, because the ambiguity here pertains to what qualifies as an 'item' to begin with, not whether NSF fees may be incurred for 'each' of them.").

Because the parties' competing interpretations of the account documents are reasonable, Plaintiff's breach-of-contract claim regarding the Bank charging multiple NSF fees on the same item is sufficient to withstand the Bank's motion to dismiss. *Petrey*, 2021 WL 2364971, at *5.

### 3. Mobile Banking Software Upgrade

After reviewing Plaintiff's Complaint, the Court is uncertain whether he alleges that a mobile banking software upgrade the Bank performed in August 2020 and September 2020 also violated

the account documents governing his claims. Specifically, although Plaintiff did not include factual allegations regarding the mobile banking software upgrade in the earlier portions of his Complaint discussing the Bank's alleged unlawful conduct, he did include the following allegation in the "First Cause of Action (Breach of Contract)" section of his Complaint: "Further, Trustco breached its contracts in approximately August and September 2020 by mishandling or impeding customers' ability to access their own electronic banking transactions and thereby caused further fees to occur." (Dkt. No. 1, ¶ 103.) Accordingly, out of an abundance of caution, the Court addresses Plaintiff's potential argument in this Decision and Order.

"New York law and the *Twombly-Iqbal* standard of federal pleading require a complaint to identify, in non-conclusory fashion, the specific terms of the contract that a defendant has breached. Otherwise, the complaint must be dismissed.'" *Wallert v. Atlan*, 141 F. Supp. 3d 258, 286 (S.D.N.Y. Oct. 26, 2015) (quoting *Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81, 131 (S.D.N.Y. 2015)); *Noakes v. Syracuse Univ.*, 369 F. Supp. 3d 397, 418 (N.D.N.Y. Feb. 26, 2019) (McAvoy, J.) ("To state a valid claim for breach of contract, a plaintiff must state when and how the defendant breached *the specific contractual promise*."); *Ally Fin. Inc. v. Comfort Auto Grp. NY LLC*, 20-CV-1281, 2021 WL 4033249, at *5 (E.D.N.Y. Sept. 3, 2021) (collecting cases supporting the proposition that a party fails to allege a breach of contract claim where it "fails to identify any particular provision of the Agreements breached" by the other party). "Merely attaching a contract [to the complaint] does not allege a breach of its terms—the complaint must identify the contractual obligation that was breached and allege how." *Wallert*, 141 F. Supp. 3d at 286.

Nowhere in his Complaint does Plaintiff reference which account document or, specifically,

which portion of these documents the Bank allegedly breached in performing the mobile banking system upgrade.[20] Based on this failure, the Court dismisses Plaintiff's breach-of-contract claim to the extent he relies on his allegations regarding the mobile banking software upgrade in August 2020 and September 2020.

**A.**    Whether the Court Should Dismiss Plaintiff's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing

After carefully considering the matter, the Court answers the question in the affirmative for the reasons stated in the Bank's memoranda of law. (Dkt. No. 17-8, 26.) To those reasons, the Court adds the following analysis.

The Bank argues that the Court should dismiss Plaintiff's claim for breach of the implied covenant of good faith and fair dealing because it is redundant of his breach-of-contract claims (i.e., Plaintiff does not allege any other facts that are independent of or separate from the breach-of-contract claim). (*Id.* at 19-20.) Plaintiff does not dispute that his Complaint does not contain factual allegations independent of or separate from those supporting his breach-of-contract claim, but argues that under New York law, a defendant who has "complied with the literal terms of the [parties'] contract" may nevertheless be liable for breaching its implicit duties if it so acts "in a way that undermines the purpose of the contract." (Dkt. No. 49-1, at 21-22 [quoting *Benex LC v. First Data Merch. Servs. Corp.*, 14-CV-6393, 2016 WL 1069657, at *3 (E.D.N.Y. Mar. 16, 2016)].)

Plaintiff's argument is unpersuasive. "'New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach

---

[20]    This allegation is different than Plaintiff's allegations regarding OD fees on APPSN transactions, where Plaintiff cited specific portions of the account documents that he claims the Bank breached. (Dkt. No. 1, ¶¶ 33-35.)

of contract claim, based upon the same facts, is also pled.'" *Habitzreuther*, 2015 WL 5023719, at

*6 (quoting *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002));

*Maltbie's Garage and Co., Inc. v. Gen. Motors, Inc.*, 21-CV-0581, 2021 WL 4972738, at *8

(N.D.N.Y. Oct. 26, 2021) (D'Agostino, J.) (citing *Cruz v. FX DirectDealer, LLC*, 720 F.3d 115,

125 (2d Cir. 2013)). Many courts deciding cases with similar fact patterns, including most of the

cases on which Plaintiff relies to support his breach-of-contract claim, dismiss claims for breach

of the implied covenant of good faith and fair dealing where the plaintiff does not allege facts

independent of or separate from those supporting the breach-of-contract claim. *See, e.g.,*

*Richard,* 2021 WL 810218, at *14-15 ("[M]ost courts in this Circuit have, consistent with New

York law, dismissed implied covenant claims as duplicative in similar circumstances."); *Lussoro*

*v. Ocean Fin. Fed. Cred. Union*, 456 F. Supp. 3d 474, 486 (E.D.N.Y. Apr. 22, 2020); *Chambers*,

2020 WL 7261155, at *5; *Roy v. ESL Fed. Cred. Union*, 19-CV-6122, 2020 WL 5849297, at *10

(W.D.N.Y. Sept. 30, 2020); *Perks v. TD Bank, N.A.*, 444 F. Supp. 3d 635, 641 (S.D.N.Y. Mar.

17, 2020).

When addressing the claim for breach of the implied covenant in his Complaint, Plaintiff

incorporates by reference his previous allegations and lists the following facts to support his

claim:

> Plaintiff and each of the Class members entered into contracts with
> Defendant covering the subject of overdraft transactions, which
> has been identified herein as the Account Agreement contract
> which covers overdraft fees. The contracts were drafted by and are
> binding upon Defendant. Nowhere in its contracts did Defendant
> state that it would sequester funds for a transaction and thereby
> reduce the "available balance" by the amount of sequestered funds,
> yet nonetheless charge a fee at the time of the posting of the
> transaction despite already having set those funds aside. Nowhere
> did Defendant state it would charge more than one fee for the same

> item. IN Addition, the contract never stated that Defendant would
> assess more than one fee for an item.

(Dkt. No. 1, at ¶¶ 107-09.) These allegations are the exact same as those used to support

Plaintiff's breach-of-contract claim. Although Plaintiff may plead alternative and inconsistent

causes of action, he has not done so here; "instead, [he has] pled a *duplicative* cause of action."

*Richard*, 2021 WL 810218, at *15 (emphasis in original). The Court therefore dismisses

Plaintiff's claim for breach of the implied covenant of good faith and fair dealing.

    **B.**    Whether the Court Should Dismiss Plaintiff's Claim for Unjust
        Enrichment/Restitution

    After carefully considering the matter, the Court answers the question in the affirmative

for the reasons stated in the Bank's memoranda of law. (Dkt. No. 17-8, 26.)To those reasons, the

Court adds the following analysis.

    Similar to its arguments regarding Plaintiff's claim for breach of the implied covenant of

good faith and fair dealing, the Bank argues that Plaintiff's claim for unjust

enrichment/restitution must be dismissed for two reasons: (1) the claim duplicates his breach-of-

contract claim; and (2) a claim for unjust enrichment/restitution can only remain if there is a

dispute as to whether there was a valid and enforceable contract between the parties, which no

party disputes in this case. (Dkt. No. 17-8, at 19-20; Dkt. No. 26, at 7-8.) Plaintiff responds that,

at this stage of the lawsuit, and pursuant to Fed. R. Civ. P. 8(d), he may plead alternative and

inconsistent legal theories, such as breach of contract and unjust enrichment/restitution. (Dkt.

No. 22, at 24, n. 9.)

    The Court agrees with the Bank that Plaintiff's Complaint does not contain factual

allegations to support his claim for unjust enrichment/restitution. Because Plaintiff does not

allege that the relevant account documents are invalid or unenforceable, the Court dismisses his claim for unjust enrichment/restitution. *See Perks*, 444 F. Supp. 3d at 642 ("It is well settled that a claim for unjust enrichment will not lie if the parties have a contract. Although an exception to that rule exists when there is a question whether the contract is valid, that exception does not apply here."); *Chambers*, 2020 WL 7261155, at *6 ("The exception does not apply here, as there is no question that the contract between Plaintiff and HSBC is valid, only a question as to the scope of the term 'item' within that contract."); *McNeil*, 2020 WL 5802363, at *3 ("Given that Plaintiff does not allege the Account Agreements are invalid or unenforceable, his unjust enrichment claim fails as a matter of law.").

**C.** Whether the Court Should Dismiss Plaintiff's Claim for Money Had and Received

After carefully considering the matter, the Court answers the question in the affirmative for the reasons stated in the Bank's memoranda of law. (Dkt. Nos. 17-8, 26.) To those reasons, the Court adds the following analysis.

"Under New York law, 'claims for unjust enrichment and money had and received are identical.'" *Story v. SEFCU*, 18-CV-0764, 2019 WL 2369878, at *5 (N.D.N.Y. June 5, 2019) (D'Agostino, J.) (quoting *J.C. Penney Corp. v. Carousel Ctr. Co., L.P.*, 635 F. Supp. 2d 126, 129, n.1 (N.D.N.Y. 2008) (D'Agostino, J.)); *Almazan v. Almazan*, 14-CV-0311, 2015 WL 500176, at *14 (S.D.N.Y. Feb. 4, 2015) (finding the plaintiffs' claim for money had and received "survive[d] for the same reasons" as their unjust enrichment claim); *Maxus Leasing Grp. v. Kobelco Am., Inc.*, 04-CV-0518, 2007 WL 655779, at *5, n. 15 (N.D.N.Y. Feb. 26, 2007) (Scullin, J.).

Accordingly, based on the Court's ruling on Plaintiff's claim for unjust enrichment and restitution, the Court dismisses Plaintiff's claim for money had and received.

**D.**     Whether the Court Should Dismiss Plaintiff's Claim for Violation of the Electronic Funds Transfers Act (Regulation E)

After carefully considering the matter, the Court answers the question in the affirmative for the reasons stated in the Bank's memoranda of law. (Dkt. Nos. 17-8, 26.) To those reasons, the Court adds the following analysis.

The Bank argues that the Court should dismiss Plaintiff's Regulation E claim because Plaintiff does not allege in his Complaint that he ever opted into a Regulation E "Opt-In" Contract. (*Id.* at 5-6, 21.) Additionally, the Bank argues that Plaintiff's Regulation E claim is time barred, because the EFTA has a one-year statute of limitations for Regulation E claims, which accrues upon the date of the first allegedly improper transaction. (*Id.* at 21.) Plaintiff's opposition motion contains only a footnote related to the Bank's arguments, which states that "[the Bank's] attack on the Regulation E claim should be denied for the identical reason as the APPSN claim attack, as Reg[ulation] E transactions are only those involving a debit card or ATM withdrawal and pertain to the same language." (Dkt. No. 22, at 4-5.)

After reviewing Plaintiff's Complaint, the Court does not see any allegations by Plaintiff that he entered into a Regulation E Opt-In Contract. (*See generally* Dkt. No. 1.) In the first few pages of his Complaint, Plaintiff describes Regulation E and its purpose, as well as the information that must be included in a Regulation E Opt-In Contract. (*Id.* at ¶¶ 12-14.) Plaintiff then states as follows:

If the financial institution does not contain proper, affirmative

37

consent from the customer that meets all of the requirements of
Reg. E's Opt-In Rule, including fulfilling each of the above-
referenced requirements, then it is not permitted to charge
overdraft fees on ATM and one-time debit card transactions. Upon
information and belief, although formal discovery will be required
to confirm this, Defendant did not fulfill these Reg. E
prerequisites. The requirements which it did not fulfill, on
information and belief, include, *inter alia*, in its actual Overdraft
Protection contract document, failing to correctly describe the
program pursuant to which Defendant actually assessed these
overdraft fees, failing to abide by its terms, and also using it as an
impermissible marketing vehicle.

(*Id.* at ¶ 15.) Plaintiff restates these allegations later in his Complaint when asserting his

Regulation E claim. (*Id.* at ¶¶ 122-28.)[21]

Plaintiff's allegations in his Complaint are not like those in *Story v. SEFCU*, where the

court denied the defendant's motion to dismiss the Regulation E claim after the defendant

alleged that the plaintiff "never affirmatively allege[d] that she opted in to SEFCU's Regulation

E overdraft program." 2019 WL 2369878, at *4-5. In *Story*, the court found that the Regulation

E claim survived the defendant's motion to dismiss because the plaintiff included the following

allegation in her complaint: "SEFCU entered into a contract with Plaintiff and its other

customers specifically dictating the terms of its optimal overdraft program ('Opt-In Contract')

which is attached hereto as Exhibit 1.' *Id.* at 5. Without similar allegations indicating Plaintiff

---

[21]     "Defendant failed to comply with Reg. E, 12 C.F.R. § 1005.17, which requires
affirmative consent before a financial institution is permitted to assess overdraft fees against
customer's accounts through an overdraft program for ATM and non-recurring debit card
transactions. Defendant has failed to comply with the 12 C.F.R. § 1005.17 opt-in requirements
including, *inter alia*, failing to provide its customers with a valid description of the overdraft
program which meets the strictures of 12 C.F.R. § 1005.17. It did not in its Opt-In contract
describe in a 'clear and readily understandable way' that it would be using its APPSN
accounting gimmick to assess overdraft fees on ATM and debit card transactions." (Dkt. No. 1,
at ¶ 126.)

entered into a Regulation E Opt-In contract, Plaintiff's Complaint fails to state a Regulation E

claim.[22]

      **E.**    Whether the Court Should Dismiss Plaintiff's Claim for Violation of New York
             GBL § 349

      After carefully considering the matter, the Court answers the question in the negative for

the reasons stated in the Plaintiff's memorandum of law. (Dkt. No. 22.) To those reasons, the

Court adds the following analysis.

      The Bank argues that Plaintiff fails to state a claim for violation of New York GBL § 349

for two reasons: (1) Plaintiff does not allege an act or practice that was misleading in a material

respect separate and apart from allegations that the Bank breached the contractual agreements

(Dkt. No. 17-8, at 22-23); and (2) Plaintiff does not allege that he saw, read, or relied upon

misrepresentations made by the Bank because he does not allege to have read any of the relevant

account documents and did not include factual allegations regarding what Plaintiff relied upon in

forming that misrepresentation (*id.* at 23). Plaintiff disputes the first assertion, arguing that he

"adequately alleged more than just contract interpretation alone," and that "[s]imilar allegations

have long been upheld in analogous cases where contract language is misleading . . . ." (Dkt. No.

22, at 24-25.)

      "Section 349 prohibits '[d]eceptive acts or practices in the conduct of any business, trade

or commerce or in the furnishing of any service in this state' and provides a cause of action to

'any person who has been injured' by a violation of the section." *Cruz*, 720 F.3d at 122 (quoting

---

[22]      The Court also notes that, based on the Complaint, Plaintiff does not seem to allege that
he did not receive an Opt-In contract and that failing to receive such document violated
Regulation E. Rather, Plaintiff appears to challenge the sufficiency of the Opt-In contract's terms
under Regulation E, which, as previously stated, he does not have standing to challenge.

N.Y. Gen. Bus. Law § 349(a), (h)). "In order to successfully assert a claim under GBL § 349, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Kronenberg v. Allstate Ins. Co.*, 18-CV-6899, 2020 WL 1234603, at *2 (E.D.N.Y. Mar. 13, 2020); *Richard*, 2021 WL 810218, at *16.

In this context, courts are split as to whether to dismiss GBL § 349 claims as duplicative of breach-of-contract claims.[23] The *Richard* court succinctly addressed this split when deciding to deny the defendant's motion to dismiss the GBL § 349 claim:

> The Court recognizes that some courts in this Circuit adjudicating similar cases have dismissed § 349 claims that fail to allege 'an act or practice that was misleading in a material respect separate and apart from the allegations that the defendant violated the contract.' Other courts, however, have allowed § 349 claims to proceed alongside breach of contract claims where, as here, a plaintiff alleges that a defendant used misleading contractual language to deceive consumers about the true nature of the defendant's Overdraft or NSF Fee practices.
>
> In a similar vein, relying on recent Second Circuit case law, some courts in this Circuit have allowed § 349 claims to proceed alongside breach of contract claims even where the harm alleged for the § 349 claims is identical to the loss alleged for the breach of contract claims."

*Richard*, 2021 WL 810218, at *17.

Here, Plaintiff included the following factual allegations in his Complaint regarding the Bank's allegedly misleading practices:

---

[23]     *Compare Chambers*, 2020 WL 7261155, at *5-6 (dismissing GBL § 349 claim) *and Kelly*, 2020 WL 777463, at *8-10 (same) *and Perks*, 444 F. Supp. 3d at 642 (same) *with Nick's Garage*, 875 F.3d at 125 (permitting co-existence of breach-of-contract claim and GBL § 349 claim) *and Richard*, 2021 WL 810218, at *16-17 (same) *and McNeil*, 2020 WL 5802363, at *2 (same) *and Roy*, 2020 WL 5849297, at *11 (same) *and Lussoro*, 456 F. Supp. 3d at 490-92 (same).

> Defendant stated it would only charge overdraft fees against its
> customers when their accounts did not contain enough available
> funds in them than was called for a given transaction. In reality,
> Defendant would sequester these funds for a transaction when
> enough were available for a transaction without going negative but
> charged Plaintiff and Class members overdraft fees when the
> transaction with the sequestered funds would post.
>
> This practice is deceptive because, *inter alia*, Defendant promised
> Plaintiff and Class members that it would only assess overdraft
> fees where the transaction at issue exceeded the actual amount of
> money to pay for the transaction in question.
>
> . . .
>
> Plaintiff and Class members suffered harm from these practices
> when they were assessed wrongful overdraft and NSF fees.

(Dkt. No. 1, at ¶¶ 131-32, 135.)

Based on these allegations and a review of the case law regarding this issue, the Court is persuaded that Plaintiff's GBL § 349 claim survives dismissal at this stage. Although the Bank's cited cases dismissed the plaintiff's GBL § 349 claim because either the plaintiff did not "allege[] an act or practice that was misleading in a material respect separate and apart from the complaint's allegations [regarding the breach of contract]," *see Chambers*, 2020 WL 7261155, at *5, or because "the alleged damages for both the breach of contract claim and Section 349 claim" were the same, *see Kelly*, 2020 WL 777463, at *10, the Second Circuit in *Nick's Garage, Inc. v. Progressive Casualty Ins. Co.* permitted co-existence of a breach-of-contract claim and a GBL § 349 claim. 875 F.3d 107 (2d Cir. 2017); *Roy*, 2020 WL 5849297, at *11 ("A GBL and breach of contract claim co-existed in *Nick's Garage.* Accordingly, the Court denies ESL's motion to dismiss Plaintiff's GBL claim at this time."). The Court therefore declines to dismiss Plaintiff's GBL § 349 clam on this ground at this time. *Richard*, 2021 WL 810218, at *16-17,

*McNeil*, 2020 WL 5802363, at *2, *Roy*, 2020 WL 5849297, at *11, *Lussoro*, 456 F. Supp. 3d at 490-92.

Further, the Court will not dismiss Plaintiff's GBL § 349 claim based on the Bank's second argument. "[C]ontrary to [the Bank's] assertion, Plaintiff need not allege that he ever read the Account Agreements to satisfy causation. Under New York law, '[t]he Court of Appeals has been clear that a plaintiff *need not show* that s/he *relied* on the misrepresentations in order to have a claim under GBL § 349.'" *McNeil*, 2020 WL 5802363, at *3 (quoting *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 43 (E.D.N.Y. 2008)); *Costoso v. Bank of Am., N.A.*, 74 F. Supp. 3d 558, 575 (E.D.N.Y. 2015) ("To state a claim under Section 349, plaintiffs need not allege they relied on defendant's misrepresentations.").

Accordingly, the Court will not dismiss Plaintiff's GBL § 349 claim.

**F.** **Whether the Court Should Grant Plaintiff's Request for Leave to Amend His Complaint**

After carefully considering the matter, the Court answers this question in the negative, for the reasons stated below.

In his response to the Bank's motion to dismiss, Plaintiff included a sentence requesting leave to amend, should the Court grant any portion of the Bank's motion to dismiss. (Dkt. No. 22, at 25.) As the Court explained in *Sobon v. Horizon Eng'g Assocs., LLP*, this request to amend (from a counselled Plaintiff) is procedurally defective:

> Plaintiff's purported cross-motion to amend [his] complaint consists of one sentence at the conclusion of [his] memorandum of law requesting leave to amend [his] complaint pursuant to Fed. R. Civ. P. 15(a)(2). Such a motion is procedurally defective. Plaintiff has failed to comply with Local Rule [15.1] of the Local Rules of Practice for his Court, requiring the attachment of an unsigned copy of the proposed amended pleading to her motion papers, which must identify the amendments in the proposed pleading,

42

> either through the submission of a red-lined version of the original
> pleading or other equivalent means.

*Sobon v. Horizon Eng'g Assocs., LLP*, 13-CV-1431, 2014 WL 4889340, at *11 (N.D.N.Y. Sept. 30, 2014) (Suddaby, C.J.).

Further, the Court holds that, except with regard to Plaintiff's claim for breach of contract related to the mobile banking software upgrade in August 2020 and September 2020 and the claim for violation of the EFTA (Regulation E), leave to amend is unwarranted. Pursuant to Fed. R. Civ. P. 15(a)(2), leave to amend a complaint should be freely given "[i]n the absence of any apparent or declared reason to not grant leave to amend[,] such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." *Foman*, 371 U.S. at 182. "[W]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Manship v. T.D. Bank, N.A.*, 12-CV-0329, 2021 WL 981587, at *13-14 (N.D.N.Y. Mar. 16, 2021) (Suddaby, C.J.) (internal citations and quotation marks omitted). "'[A]n opportunity to amend is not required where the defects in plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile.'" *Manship*, 2021 WL 981587, at *13-14 (quoting *Sorrentino v. Barr Labs Inc.*, 09-CV-0591, 2010 WL 2026135, at *5 (N.D.N.Y. May 20, 2010)).

In this Decision and Order, the Court dismisses the following five claims: (1) the claim for breach of contract related to the mobile banking software upgrade in August 2020 and September 2020; (2) the claim for breach of the implied covenant of good faith and fair dealing; (3) the claim for unjust enrichment/restitution; (4) the claim for money had and received; and (5)

the claim for violation of the EFTA (Regulation E). The defects in Plaintiff's claims with respect to breach of the implied covenant of good faith and fair dealing, unjust enrichment/restitution, and money had and received are all substantive, as the Court described in previous portions of this Decision and Order. Accordingly, amendment is not required, and the claims will be dismissed with prejudice. *Manship*, 2021 WL 981587, at *13-14.

The Court notes, however, that Plaintiff may be able to provide enough additional factual allegations to state the remaining dismissed claims (i.e., the breach-of-contract claim related to the mobile banking software upgrade and the Regulation E claim), because he has not previously amended his Complaint and the defects could be "merely formal," rather than substantive. *Manship*, 2021 WL 981587, at *13-14. As a result, those claims are dismissed without prejudice.

**ACCORDINGLY,** it is

**ORDERED** that the Bank's motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) (Dkt. No. 17) is **<u>DENIED</u>** with respect to the following claims:

> (a) the claim for breach of contract based on the allegations regarding OD fees on APPSN transactions;
>
> (b) the claim for breach of contract based on the allegations regarding NSF fees on re-presented payments;
>
> (c) the claim for violation of GBL § 349; and it is further

**ORDERED** that the Bank's motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) (Dkt. No. 17) is **<u>GRANTED</u>** with respect to the following claims, which are **<u>DISMISSED</u>** with prejudice:

> (a) the claim for breach of the implied covenant of good faith and fair

dealing;

(b) the claim for unjust enrichment/restitution;

(c) the claim for money had and received; and it is further

**ORDERED** that that the Bank's motion to dismiss for failure to state a claim under Fed.

R. Civ. P. 12(b)(6) (Dkt. No. 17) is **GRANTED** with respect to the breach-of-contract claim

based on the allegations regarding the mobile banking software upgrade and the claim for

violation of the Electronic Funds Transfer Act (Regulation E), which are **DISMISSED without**

**prejudice** to refiling upon a successful motion to amend within **THIRTY (30) DAYS** of the

filing of this Decision and Order.


Date:   March 16, 2022
        Syracuse, New York



Hon. Glenn T. Suddaby
Chief U.S. District Judge